UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————x

In re:                                               :
                                                     :
LEHMAN BROTHERS HOLDINGS, INC.,                      :
                                                     :
            Debtors.                                 :
                                                     :
————————————————————————             :
                                                     :
344 INDIVIDUALS, Identified in the Notices           :        **OPINION AND ORDER**
of Appearance at Bankruptcy Court ECF Dkt.           :
Nos. 8234, 8905 and 9459,                            :           14 Civ. 7643 (ER)
                                                     :
            Appellants,                              :
                                                     :
            v.                                       :
                                                     :
JAMES W. GIDDENS, as Trustee for the SIPA            :
Liquidation of Lehman Brothers Inc.,                 :
                                                     :
            Appellee.                                :
————————————————————————x

Ramos, D.J.:

        344 individuals ("Appellants" or "Claimants") identified in the Notices of Appearance

filed with the United States Bankruptcy Court for the Southern District of New York, Bankr.

Doc. 8234, 8905, and 9459,[1] appeal from an order of the Bankruptcy Court (the "Order"), Bankr.

Doc. 9617, denying their motion to compel arbitration.  Doc. 1.  For the reasons set forth below,

the Bankruptcy Court's Order is AFFIRMED.

   I.      **Background**

        On September 19, 2008, pursuant to the Securities Investor Protection Act of 1970

("SIPA"), 15 U.S.C. § 78aaa *et seq.*, Judge Gerard Lynch of the Southern District of New York

entered an order commencing liquidation of Lehman Brothers, Inc. ("LBI").  *Securities Investor*

---

[1] References to "Bankr. Doc." relate to documents filed in the underlying bankruptcy proceeding, *In re Lehman Bros. Inc.*, No. 08-01420 (SCC).  References to "Doc." relate to documents filed in the instant appeal.

*Protection Corp. v. Lehman Brothers Inc.*, No. 08 Civ. 8119 (GEL) (S.D.N.Y. Sept. 19, 2008) (Doc. 3); *see also* Bankr. Doc. 1.  The case was removed to the Bankruptcy Court and James W. Giddens was appointed Trustee (the "Trustee") for the liquidation.  15 U.S.C. § 78eee(b)(3), (4).

The liquidation of LBI is the largest in U.S. history.  Tr. 65:16.  Over 125,000 claims have been asserted against LBI for hundreds of billions of dollars.  Trustee's Opp'n Br. at 2. Over the past seven years, the Bankruptcy Court, first under Judge Peck and now under Judge Chapman, has overseen the claims process, provided notice and process, and administered LBI's estate.  *Id.* at 2, 4.

Claimants are former Shearson Lehman Brothers, Inc. ("Shearson") employees who participated in an Executive and Select Employees Deferred Compensation Plan ("ESEP") established by Shearson.  Claimants' Br. at 2.  In 1985, Claimants signed the Executive and Select Employees Deferred Compensation Agreement ("ESEP Agreement"), agreeing to defer portions of their compensation in exchange for retirement benefits paid by Shearson under the ESEP upon Claimants' retirement.  *Id.*; Bankr. Doc. at 8576.  This adversary proceeding arises from the Trustee's attempt to enforce the subordination provision of the ESEP Agreement against Appellants' claim for recovery of deferred compensation payments allegedly due to them (the "ESEP Claims").  *See* Bankr. Doc. 8576.

The subordination provision in the ESEP Agreement relates to Claimants' right to payment as subordinate to other unsubordinated creditors:

> Employee irrevocably agrees that the obligations of Shearson hereunder with respect to the payment of amounts credited to his deferred compensation account are and shall be subordinate in right of payment and subject to the prior payment or provision for payment in full of all claims of all other present and future creditors of Shearson whose claims are not similarly subordinated . . . .

*Id.* Ex. 1 (ESEP Agreement) at § 9(d). This provision also specifically discusses the impact of a SIPA liquidation on Claimants' payment rights:

> In the event of . . . liquidation pursuant to [SIPA] . . . , the Employee shall not be entitled to participate or share, ratably or otherwise, in the distribution of the assets of Shearson until all claims of all other present and future creditors of Shearson, whose claims are senior to claims arising under this agreement, have been fully satisfied or provision has been made therefor.

*Id.* Based on the subordination provision, the Trustee objected, through six separately filed omnibus objections ("Omnibus Objections"),[2] to Claimants' claims for deferred compensation and sought an order from the Bankruptcy Court that the ESEP Claims were subordinate to the claims of general unsecured creditors. Bankr. Doc. 8576.

Claimants objected to the Trustee's use of Omnibus Objections as a means to subordinate the ESEP Claims as improper under the Federal Rules of Bankruptcy Procedure, which allegedly require that a subordination claim be litigated in a full adversary proceeding. *See* Claimants' Br. at 2; Bankr. Doc. 8280. The Trustee agreed to proceed in that fashion and moved the court to allow it to convert its Omnibus Objections into an adversary proceeding. Bankr. Doc. 8196. On February 27, 2014, the Bankruptcy Court held a hearing on the issue and, over Claimants' objections,[3] granted the Trustee's motion to covert. Bankr. Doc. 8446. Claimants did not seek

---

[2] According to the Trustee, the six Omnibus Objections are: (1) the Trustee's one hundred twelfth omnibus objection to general creditor claims (subordinated claims), filed on July 19, 2013 (Bankr. Doc. 6847); (2) the Trustee's one hundred thirteenth omnibus objection to general creditor claims (subordinated claims), filed on July 23, 2013 (Bankr. Doc. 6865); (3) the Trustee's one hundred fourteenth omnibus objection to general creditor claims (subordinated claims), filed on July 23, 2013 (Bankr. Doc. 6866); (4) the Trustee's one hundred thirty-eighth omnibus objection to general creditor claims (subordinated claims), filed on September 16, 2013 (Bankr. Doc. 7264); (5) the Trustee's one hundred forty-seventh omnibus objection to general creditor claims (subordinated claims), filed on October 3, 2013 (Bankr. Doc. 7388); and (6) the Trustee's one hundred ninety-eighth omnibus objection to general creditor claims (employee claims), filed on January 28, 2014 (Bankr. Doc. 8153) to the extent that the one hundred ninety-eighth omnibus objection to general creditor claims which seeks to subordinate the portion of a claim which constitutes an ESEP claim. Trustee's Opp'n Br. At 5 n.4; *see also* Bankr. Doc. 8576.

[3] Claimants objected to the conversion of the Omnibus Objections. *See* Bankr. Doc. At 8280. Claimants instead sought that the Trustee refile the objections as an adversary proceeding to ensure the retention of certain procedural protections. *Id.* The Bankruptcy Court gave its "word [with] the Trustee's agreement that there . . . are not going to

leave to appeal that order.  On April 1, 2014, the Trustee served the Conversion Order and the annexed complaint ("Conversion Complaint") on Claimants.  Bankr. Doc. 8576.  The Conversion Complaint is brought pursuant to 11 U.S.C. §502(b) and §510(a)[4] and seeks to subordinate the ESEP Claims.  *Id.*  Claimants filed their Answer to the Conversion Complaint on April 29, 2014, articulating four defenses.  Bankr. Doc. 8783.

*First*, Claimants contend that the ESEP Agreement is a rejected executory contract and thus, the Trustee cannot enforce the subordination provision against Claimants.  *Id.* ¶¶14-23.

*Second*, Claimants contend the subordination provision applies only to the former entity Shearson and not the Debtor, LBI, as established by the provision's language.  *Id.* ¶¶ 24-78. Claimants point out that in the relevant portions of the subordination provision, the ESEP Agreement references only Shearson, not Shearson and its successors, while other provisions of the ESEP Agreement, including other sections of the subordination provision, the agreement references Shearson *and its successors*.  *Id.* ¶¶ 26, 47, 49, 53, 55-63 (emphasis added). Claimants also contend that under New York law LBI would likely not be considered Shearson's successor.  *Id.* ¶ 46.

Claimants' third and fourth defenses allege that LBI materially breached the ESEP Agreement by failing to maintain the required plan administrative body and by taking

---

be any shortcuts in terms of your clients' substantive rights or due process rights" if the motion to convert is granted instead of proceeding as a newly filed adversary proceeding.  Conversion Hr'g Tr. 12:24-13:1 (held Feb. 27. 2014).

[4] These bankruptcy sections are applicable in SIPA liquidation proceedings pursuant to SIPA § 78fff(b), which provides "[t]o the extent consistent with the provisions of this chapter, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of Title 11" and § 78fff-1(a), which states "[a] trustee shall be vested with the same powers and title with respect to the debtor and the property of the debtor, including the same rights to avoid preferences, as a trustee in a case under Title 11."

impermissible tax deductions.  *Id.* ¶¶ 79-93.  Claimants argue that these material breaches allegedly preclude the Trustee from relying on the subordination provision.  *Id.* ¶¶ 88, 93.

Claimants also assert various affirmative defenses, including relying on an arbitration provision in the ESEP Agreement requiring that disputes arising out of the subordination provision be submitted to arbitration:

> This agreement and all other similar agreements which become effective shall be interpreted and construed by the Administrative Committee and the determination of the Administrative Committee as to any disputed question shall be conclusive, except that any controversy arising out of or relating to the subordination provisions of paragraph 9, shall be, submitted to and settled by arbitration pursuant to the Constitution and Rules of the New York Stock Exchange ('Exchange').  Shearson and Employee shall be conclusively bound by such arbitration.

Bankr. Doc. 8576 Ex. A at § 5(i); *see also* Bankr. Doc. 8783 ¶ 102.

On June 6, 2014, Claimants filed a motion to stay the adversary proceeding and compel arbitration of the issue of whether the ESEP Claims are subordinated pursuant to Section 5(i) of the ESEP Agreement.  Bankr. Doc. 9067.  The Trustee filed its opposition on July 3, 2014. Bankr. Doc. 9387.  On July 24, 2014, Claimants filed their reply.  Bankr. Doc. 9476.

 On July 30, 2014, a hearing on the motion to compel was held before the Bankruptcy Court.  Bankr. Doc. 9802 Ex. A.  After hearing oral argument, the Court denied Claimants' motion.  Arbitration Hr'g Tr. ("Tr.") 60:24-25.  In denying the motion, the Court addressed the "federal policy favoring arbitration" established by the Federal Arbitration Act ("FAA") but explained that this policy is subject to override by contrary congressional command.  Tr. 61:4-10.  The court also identified the two-part test for determining when a Bankruptcy Court has the discretion to decline to compel arbitration:  (1) whether the proceeding is considered a core or non-core bankruptcy proceeding, and (2) if the court finds the proceeding is considered a core bankruptcy proceeding, whether the arbitration "would seriously jeopardize the objectives of the

bankruptcy code such that there is an inherent conflict between arbitration and the code."  Tr. 62:9-15 (citing *In re U.S. Lines, Inc.*, 197 F.3d 631, 640-41 (2d Cir. 1999), *cert. denied,* 529 U.S. 1038 (2000)); *see also* Tr. 61:17-22.

Applying the two-part test, the Bankruptcy Court first held that the dispute before it— determining "where the claimants' claims fall in the priority scheme of distributions to LBI's general creditors"—is a core proceeding.  Tr. 63:23-64:5 (citing *In re Best Products Co., Inc.*, 68 F.3d 26, 31 (2d Cir. 1995)).  The court also found that Claimants' argument that the subordination provision subordinates their claims as to claims against Shearson, but not as to claims against LBI, put the definition of the debtor entity in this liquidation at issue.  *Id.* 64:8-19. According to the court, a core function of the Bankruptcy Court is to define the debtor entity.  *Id.* The Court then identified two distinct objectives of the Bankruptcy Code implicated by the proposed arbitration.  First, the court determined that compelling arbitration of the subordination provision would jeopardize the objectives of the Bankruptcy Code concerning where claims fall in the priority scheme of distributions.  *Id.* 64:21-65:2.  Addressing the second part of the test, the court found that

> [a]rbitrating the subordination issue would jeopardize the objectives of the bankruptcy code and conflict with the integrity of the bankruptcy process in this case.  An outcome contrary to the provisions of the bankruptcy code, which, by their very nature, evidence Congress' intent to treat differently-situated creditors differently, would disrupt the priority scheme that this Court is duty-bound to apply to all creditors in this SIPA liquidation.

*Id.*  The court also discussed the historical context in which the ESEP Agreement was executed and suggested that Congress "simply could not have" intended for the determinations of the priority of claims or the equitable distribution of LBI's estate's assets "in the largest SIPA liquidation in U.S. history" to be determine by the rules of the New York Stock Exchange.  *Id.* 38:17-22, 65:13-19.

6

On August 11, 2014, the Bankruptcy Court entered an order denying Claimants' motion to compel arbitration for the reasons stated at the July 30, 2014 hearing.  Bankr. Doc. 9617.

On September 22, 2014, Claimants filed the instant appeal.  Doc. 1.  Claimants contend that the Bankruptcy Court applied the incorrect legal standard in denying their motion to compel arbitration by:  (1) failing to recognize and apply the presumption in favor of arbitration; (2) failing to apply the correct legal standard in determining whether to compel arbitration, specifically part two of the test, which requires the court to find a specific severe conflict between arbitration and the Bankruptcy Code in order for the court to exercise its discretion to deny arbitration; (3) misapprehending state law issues as bankruptcy law issues; and (4) misapprehending the applicable litigation proceedings when comparing the efficiencies available in arbitration versus adjudication in the Bankruptcy Court.  Claimants' Br. 2; *see also* Doc. 2.

## II.    Jurisdiction

This Court has jurisdiction to hear appeals from decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and,] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges."  28 U.S.C. § 158(a)(1), (3).  As the Bankruptcy Court denied Claimants' request for arbitration and a stay pending the outcome of arbitration, jurisdiction also exists under 9 U.S.C. § 16(a), which directs that "[a]n appeal may be taken from an order refusing a stay of any action under Section 3" or from an order "denying a petition under section 4 . . . to order arbitration to proceed."  9 U.S.C. §16(a)(1)(A), (B).

### III.    Standard of Review for the Bankruptcy Order

A district court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error.  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988-89 (2d Cir. 1990).  The Bankruptcy Court's decision that the adversary proceeding is "core" is a matter of law subject to *de novo* review.  *In re Winimo Realty Corp.*, 270 B.R. 108, 117 (S.D.N.Y. 2001). The Bankruptcy Court's decision regarding whether arbitration severely conflicts with the objectives of the Bankruptcy Code "constitutes a mixed question of law and fact[.]"  *In re U.S. Lines, Inc.*, 197 F.3d at 640-41 (internal citations omitted).  "The question of whether a Bankruptcy Court has discretion to decline to compel arbitration is . . . a matter of law that must be reviewed *de novo*."  *In re Winimo Realty Corp.*, 270 B.R. at 117 (internal citations omitted). However, where the Bankruptcy Court has discretion, "the exercise of that discretion is reviewable only for abuse."  *Id.*; *In re U.S. Lines, Inc.*, 197 F.3d at 641 ("Where the bankruptcy court has properly considered the conflicting policies in accordance with law, we acknowledge its exercise of discretion and show due deference to its determination that arbitration will seriously jeopardize a particular core bankruptcy proceeding.").

### IV.    Discussion

Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  When determining whether to compel arbitration and stay proceedings pending arbitration, a court must undertake a multi-step process:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if

> federal statutory claims are asserted, it must consider whether
> Congress intended those claims to be non-arbitrable; and, fourth, if
> the court concludes that some, but not all, of the claims in the case
> are arbitrable, it must then decide whether to stay the balance of the
> proceedings pending arbitration."

*In re Bethlehem Steel Corp.*, 390 B.R. 784, 789 (Bankr. S.D.N.Y. 2008). Here, the parties do not

dispute that a valid arbitration provision exists or that the dispute falls within the scope of the

arbitration provision. *See* Tr. 49:8-10 (the Trustee explaining "it's not a question of whether the

arbitration clause on its terms would cover this [dispute]. If the arbitration clause weren't

applicable, we wouldn't be here."); *id.* at 57:19 (the Bankruptcy Court stating "There is an

arbitration clause."). Therefore, the only issue on appeal is whether Congress intended the ESEP

Claims to be non-arbitrable in the context of this bankruptcy.

     While the Supreme Court has stated that the FAA established a "federal policy favoring

arbitration, requiring that [courts] rigorously enforce agreements to arbitrate," this mandate "may

be overridden by a contrary congressional command." *Shearson/Am. Exp., Inc. v. McMahon*,

482 U.S. 220, 226 (1987) (internal citations and quotations omitted); *In re U.S. Lines, Inc.*, 197

F.3d at 639. "If Congress did intend to limit or prohibit waiver of a judicial forum for a

particular claim, such an intent will be deducible from [the statute's] text or legislative history, or

from an inherent conflict between arbitration and the statute's underlying purposes." *In re U.S.

Lines, Inc.*, 197 F.3d at 639 (quoting *McMahon*, 482 U.S. at 227). The burden "to show that

Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue" is on

the party opposing arbitration. *McMahon*, 482 U.S. at 227.

     Within the Second Circuit, courts rely on a two-part test to determine whether to enforce

arbitration clauses in the bankruptcy context. *In re Winimo Realty Corp.*, 270 B.R. at 118 (citing

*In re U.S. Lines, Inc.*, 197 F.3d at 640-41). *First*, the court must determine whether the

proceeding at issue is a core or non-core bankruptcy proceeding. *Id.* Generally, Bankruptcy

Courts "*do not* have discretion to *decline* to stay *non-core* proceedings in favor of arbitration" because "non-core proceedings are unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration.'" *Id.* (citing *In re U.S. Lines, Inc.*, 197 F.3d at 640; *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 166 (2d Cir. 2000)) (emphasis original).  In core proceedings, however, the interest of the bankruptcy court is greater and may involve a conflict between the Bankruptcy Code and arbitration.  *Id.*   A determination that the proceeding is core does not automatically give the bankruptcy court discretion to deny arbitration because "not all bankruptcy proceedings are premised on provisions of the Code that 'inherently conflict' with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code."  *Id.* (quoting *In re U.S. Lines, Inc.*, 197 F.3d at 640).  Accordingly, the second part of the test requires a court to determine whether mandating arbitration of the core bankruptcy proceeding "would seriously jeopardize the objectives of the Bankruptcy Code."  *Id.* at 118, 123

### a.   Core / Non-Core Proceedings

"The Bankruptcy Code divides claims in bankruptcy proceedings into two principal categories: 'core' and 'non-core.'"  *In re U.S. Lines, Inc.*, 197 F.3d at 636 (citing 28 U.S.C. § 157).  "Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function."  *Id.* at 637 (internal citations omitted).  The Second Circuit has conclusively determined that the nature of the underlying adversary proceeding—whether the ESEP Claims are subordinate to that of the other general creditors under the ESEP Agreement—is a core bankruptcy proceeding.  *See In re Best Products Co., Inc.*, 68 F.3d at 32 ("it is hard to imagine an issue that is more at the heart of the bankruptcy process than . . . . [the]

[e]nforcement of a contractual subordination agreement[, which] clearly involves the adjustment of the debtor-creditor relationship, determinations of the priority of liens, and administration of the estate and so falls within the ambit of 28 U.S.C. 157"); *In re U.S. Lines, Inc.*, 197 F.3d at 636 (noting that "contractual subordination agreements affecting priority of claims" and "[f]ixing the order of priority of creditor claims against a debtor" are core bankruptcy functions).

The rejection of an executory contract is also considered a fundamental issue of bankruptcy law "unique to the Bankruptcy Code" and "challenges to the effects of rejection orders are core proceedings because they are claims that would not exist independent of the bankruptcy case." *In re Great Atl. & Pac. Tea Co., Inc.*, 467 B.R. 44, 58 (S.D.N.Y. 2012), *aff'd sub nom. Grocery Haulers, Inc. v. Great Atl. & Pac. Tea Co., Inc.*, 508 Fed. App'x 63 (2d Cir. 2013) (summary order); *see also* Tr. 27:12-20 (the Bankruptcy Court explaining that whether or not the ESEP Agreement is an executory contract is "an issue that the bankruptcy court uniquely understands. . . .Whether or not something is an executory contract is a bankruptcy thing.  It's not a purely state court thing.").  In addition, the determination of the debtor's identity over time may also be considered a core proceeding because defining the debtor's identity logically is required to administer the bankruptcy estate.  *See* 28 U.S.C. §§ 157(b)(2)(A) ("core proceedings include, but are not limited to matters concerning the administration of the estate").

In light of the forgoing, the Bankruptcy Court correctly determined that the issues raised in the adversary proceeding were quintessentially core bankruptcy proceedings.  Indeed, Claimants do not argue that the issue of subordination is not a core bankruptcy proceeding, but instead fault the Bankruptcy Court for failing to address the impact of the alleged predominance of nonbankruptcy law, arising in part from Claimants' defenses to subordination.  *See* Claimants' Br. at 17-18; Claimants' R. Br. at 1-2 (stating that it has "never disputed" that this dispute is

11

"core.").[5]   According to Claimants, the fact that nonbankruptcy law predominates should be a critical component in the Court's analysis of whether to compel arbitration.  *See* Claimants' Br. at 18.  However, the majority of cases relied on by Claimants are inapposite as they deal with the Bankruptcy Court's discretion to abstain in favor of state or federal district court, where one of the factors in that determination is "the extent to which [non-bankruptcy] law issues predominate over bankruptcy issues."  *In re Portrait Corp. of Am., Inc.*, 406 B.R. 637, 641 (Bankr. S.D.N.Y. 2009) (alteration original); *see also In re Motors Liquidation Co.*, 457 B.R. 276, 289 (Bankr. S.D.N.Y. 2011); *In re Casual Male Corp.*, 317 B.R. 472, 477 (Bankr. S.D.N.Y. 2004) (remanding the proceeding under 28 U.S.C. § 1452(b), which provides courts with the discretion to remand "on any equitable ground" proceedings previously removed by a party to the proceeding, where one of the factors is also "the extent to which issues of state law predominate").[6]

Moreover, Claimants' argument that state law issues predominate does not divest this proceeding of its essentially core nature.  "A determination that a proceeding is not a core

---

[5] As discussed *supra* at Section I, Claimants contend that the subordination provision may not be enforced because the contract is executory, LBI's material breaches of the contract preclude reliance on the subordination provision, and that, based on the language of the ESEP Agreement and the subordination provision, the subordination provision applies only to Shearson, not the Debtor, LBI.  Claimants also contend that the Trustee's argument that Claimants' construction of the subordination provision violates Rule 15c3 promulgated under the Securities and Exchange Act of 1934 (the "1934 Act") further establishes the predominance of non-bankruptcy issues in this adversary proceeding.  Claimants' Br. at 19.

[6] The *In re CIT Group Inc.*, No. 09-16565 (ALG), 2012 WL 831095, *3, *4 (Bankr. S.D.N.Y. Mar. 9, 2012) case dealt with compelling arbitration as well as the court's determination of whether to abstain from exercising its exclusive jurisdiction in favor of the arbitrator.  The *In re CIT Group Inc.*, 2012 WL 831095 at *4 court considered the "extent to which [non-bankruptcy] law issues predominate over bankruptcy issues" in determining whether to abstain.  The court applied the Second Circuit's test to determine whether to compel arbitration, finding no conflict between arbitration and the objectives of the Bankruptcy Code because the debtor's claim for a determination of damages did "not require consideration of any bankruptcy law issues" and that the Bankruptcy Code's objective of centralizing proceedings was not implicated in this two-party bankruptcy that did not include "complex factual scenario[s] involv[ing] multiple claims."

proceeding shall not be made solely on the basis that its resolution may be affected by State law."  28 U.S.C. §157(b)(3); *In re Salander-O'Reilly Galleries, LLC*, 475 B.R. 9, 27 (S.D.N.Y. 2012) (noting that §157(b)(3) "demonstrates Congress' intent that bankruptcy courts are not precluded from adjudicating state-law claims when such claims are at the heart of the administration of the bankrupt estate."); *see also Ben Cooper, Inc. v. Ins. Co. of the State of Pa. (In re Ben Cooper* ), 896 F.2d 1394, 1399 (2d Cir. 1990) ("bankruptcy courts are not precluded from adjudicating state-law claims when such claims are at the heart of the administration of the bankrupt estate."), *vacated,* 498 U.S. 964 (1990), *reinstated,* 924 F.2d 36 (2d Cir. 1991).

The balance of the cases relied on by Claimants draw a distinction between substantially core and procedurally core proceedings.  Claimants' Br. at 18, Claimants' R. Br. at 13; *see also In re Hostess Brands, Inc.*, No. 12-22052 (RDD), 2013 WL 82914, *4 (Bankr. S.D.N.Y. Jan. 7, 2013) ("When reading the case law, it is clear that in applying that analysis the courts are motivated or swayed in part by not just a simple determination of whether a matter is non-core or core pursuant to 28 U.S.C. section 157(b), although that is an important factor, but whether, even if it is core under that section of the Judicial Code, it is, in fact, 'substantially' core or truly a function of the bankruptcy process.").  In *In re Hagerstown Fiber Ltd. Partnership*, 277 B.R. 181, 203 (Bankr. S.D.N.Y. 2002), the bankruptcy court explained that procedurally core proceedings "are garden variety pre-petition contract disputes dubbed core because of how the dispute arises or gets resolved . . . . The arbitration of a procedurally core dispute rarely conflicts with any policy of the Bankruptcy Code *unless* the resolution of the dispute fundamentally and directly affects a core bankruptcy function."  *See also In re Cardali*, No. 10-11185 (SHL), 2010 WL 4791801, at *8 (Bankr. S.D.N.Y. Nov. 18, 2010).  "Other proceedings are core for substantive reasons; they are not based on the parties' pre-petition relationship, and involve

rights created under the Bankruptcy Code . . . . [in] such disputes . . . . it is more likely that the arbitration will conflict with the policy of the Bankruptcy Code that created the right in dispute." *In re Hagerstown Fiber Ltd. Partnership*, 277 B.R. at 203; *see also In re Hostess Brands, Inc.*, 2013 WL 82914, *3 (describing "substantially core" as an issue or proceeding that "is central to the bankruptcy process that Congress contemplated as substantially altering otherwise existing and enforceable rights under applicable non-bankruptcy law, and that Congress did so in light of the fact that it is a multi-party process, and not just a simple two-party dispute.").

This Court affirms the Bankruptcy Court's finding that this adversary proceeding is a core bankruptcy proceeding but does not decide whether it is substantially or procedurally core because, as discussed *infra*, notwithstanding that distinction, arbitration of the subordination dispute directly affects core bankruptcy functions and seriously jeopardizes the objectives of the Bankruptcy Code.[7]

### b.  Severe Conflict

"In exercising its discretion over whether, in core proceedings, arbitration provisions ought to be denied effect, the bankruptcy court must still 'carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause.'"  *In re U.S. Lines, Inc.*, 197 F.3d at 640 (quoting *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1161 (3d Cir. 1989)).  Stated slightly differently, "even as to core proceedings, the bankruptcy court will not have discretion to

---

[7] Claimants contend the Bankruptcy Court erred by focusing on whether the proceeding was core or non-core because this determination is not dispositive of the issue of whether to compel arbitration.  *See* Claimants' Br. at 25. Despite Claimants' characterization of the oral argument and the court's decision, the Bankruptcy Court addressed *both* prongs of the test:  (1) whether the proceeding was core or non-core, and (2) whether arbitration would seriously conflict with the Bankruptcy Code.  *See, e.g.*, Tr. 61:17-65:2.  The Bankruptcy Court also addressed the presumption in favor of arbitration.  *See id.* 61:4-5.

override an arbitration agreement unless it finds that the proceedings are based on provisions of the Bankruptcy Code that 'inherently conflict' with the Arbitration Act or that arbitration of the claim would 'necessarily jeopardize' the objectives of the Bankruptcy Code." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006) (quoting *In re U.S. Lines, Inc.*, 197 F.3d at 640 (describing the inquiry as whether compelling arbitration "would seriously jeopardize the objectives of the Bankruptcy Code.")).  The Second Circuit requires that courts make "a particularized inquiry into the nature of the claim and the facts of the specific bankruptcy" to determine whether a severe conflict exists.  *Id.*  Where "a severe conflict is found, then the court can properly conclude that, with respect to the particular Code provision involved, Congress intended to override the Arbitration Act's general policy favoring the enforcement of arbitration agreements."  *Id.*  "Disputes that involve both the Bankruptcy Code and the Arbitration Act often present conflicts of 'near polar extremes [because] bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach toward dispute resolution.'"  *Id.* (quoting *In re U.S. Lines, Inc.*, 197 F.3d at 640).

As the Bankruptcy Court properly took into account, the determination of whether a conflict exists between arbitration of this contractual subordination dispute and the objectives of the Bankruptcy Code arises in context of the largest SIPA liquidation in U.S. history, with over 125,000 claims asserted against LBI for hundreds of billions of dollars.  Trustees' Opp'n Br. at 14-15; Tr. 65:16.  Indeed, the dispute arose thirty years removed from the execution of the ESEP Agreements, six years after FINRA assumed regulatory oversight of the New York Stock Exchange, and seven years deep into this massive liquidation.  Thus, the Bankruptcy Court's conclusion that "Congress simply could not have intended to turn over the determination of the relative priority of claims against the estate and the equitable distribution of the estate's assets in

the largest SIPA liquidation in U.S. history [to] the Financial Industry Regulatory Authority ["FINRA"] to be decided under the rules of the New York Stock Exchange," Tr. 65:13-19, was not without a factual basis.

Claimants assert that the "size or complexity of this bankruptcy" is no reason to "vitiate" Claimants' right to arbitration.[8]   Claimants' R. Br. at 14-15.  Claimants are wrong, of course, at least in respect to *this* case.  Under the second prong of the Second Circuit's test—which explicitly requires "a particularized inquiry into the nature of the claim and *the facts of the specific* bankruptcy," *MBNA*, 436 F.3d at 108 (emphasis added)—both facts are relevant to the determination of whether a conflict exists.

The Trustee asserts that arbitrating (1) the priority of creditors' claims, (2) the identity of the debtor, or (3) the effect of the alleged rejected executory contract creates a severe conflict with the objectives of the Bankruptcy Code, which the Bankruptcy Court is uniquely positioned to address.  *See* Trustee's Opp'n Br. at 14-18.  The Court addresses each alleged conflict below.

### i.  The Priority of Claims

The Bankruptcy Court observed that the very nature of the Bankruptcy Code "evidenced Congress' intent to treat differently-situated creditors differently" and identified "the ordering of priorities among creditor [as] . . .  one of the . . . top five things that the bankruptcy code imposes in a bankruptcy process[.]"  Tr. 52:17-20, 64: 24-25; *see also* 11 U.S.C. § 507 *et seq.* (listing the priority of expenses and claims in a bankruptcy); *id.* at § 510(a) ("A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law."); *id.* at § 726(a) *et seq.* (requiring the Trustee to take into

---

[8] Claimants also contend that the size of the bankruptcy should be taken into account to establish that less than one percent of the liquidation estate is represented by the ESEP Claims.  Tr. 30:14-23; Claimants' Br. at 30-31.

account subordination under § 510 when determining the order of distributions).  Accordingly, the court found that arbitrating the subordination issue would "jeopardize the objectives of the Bankruptcy Code and conflict with the integrity of the bankruptcy process in this case . . . disrupt[ing] the priority scheme that th[e Bankruptcy] Court is duty-bound to apply to all creditors in this SIPA liquidation."  Trustee's Opp'n Br. at 15 (citing Tr. 64:25-65:2).  An arbitrator's decision regarding the subordination of the ESEP Claims would change the priority accorded to other classes of creditors, specifically those creditors with the right to receive full recovery *before* junior creditors recover anything.  *See* Tr. 30:6-8 (the court noting that there "is an entire host of claimants relying on a particular interpretation of a subordination provision."); Trustee's Opp'n Br. at 15.  Thus, contrary to Claimants' colorful description, this is not "an issue in a box." Tr. at 32:10-11.

Counsel for the parties has not directed the Court to any case that has found that compelling arbitration of a contractual subordination dispute creates a conflict, and the Court has identified none.  However, this Court finds that the Bankruptcy Court's identification and analysis of the severe conflict between arbitration and the Bankruptcy Code's objectives is consistent with the principles articulated by the Second Circuit and other district court's within this Circuit.  *See MBNA*, 436 F.3d at 110 (explaining that generally courts compel arbitration where "arbitration would not interfere with or affect the distribution of the estate," but deny arbitration where the "resolution of the arbitration claims directly implicated matters central to the purposes and policies of the Bankruptcy Code"); *U.S. Lines, Inc.*, 197 F.3d 631 (2d Cir. 1999); *In re Salander-O'Reilly Galleries, LLC*, 475 B.R. 9 (S.D.N.Y. 2012); *In re Winimo Realty Corp.*, 270 B.R. 108 (S.D.N.Y. 2001).

Claimants, however, contend that the Trustee failed to meet its burden to establish a specific severe conflict through "a particularized inquiry into the nature of the claim and the facts of the specific bankruptcy" as required under *MBNA*, 436 F.3d at 108.  As discussed *supra*, the Bankruptcy Court's discussion at oral argument and its conclusion at the July 30, 2014 hearing prove otherwise.  In any event, *MBNA* is distinguishable.   The Second Circuit in *MBNA*, 436 F.3d at 109, found that the debtor's adversary proceeding brought under the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a), was a core proceeding but compelled arbitration because no severe conflict existed where:  (1) the debtor's estate had been fully administered with all debts discharged, (2) the debtor's claims, filed as a purported class action, were not connected to her individual bankruptcy and any recovery would not be part of the bankruptcy estate, and (3) the ability to interpret and enforce the automatic stay was not "unique" to the bankruptcy court.  Here, however, liquidation is ongoing and the Trustee's claims relate directly to the liquidation.[9]  The *MBNA* court's analysis of the stay provision provides a more difficult question.  However, while the Bankruptcy Court may not be unique in its ability to analyze contractual subordination claims or Claimants' defenses to subordination, the contractual subordination issue goes to the heart the bankruptcy process—it is uniquely positioned to undertake such analysis in the context of determining the priority of claims among creditors,

---

[9] Claimants contend that because this is a liquidation, not a reorganization, arbitration would not interfere with the Bankruptcy Code's policy of centralizing disputes, which the Fourth Circuit in *In re White Mountain Mining Co., LLC*, 403 F.3d 164, 170 (4th Cir. 2005), found to be "especially critical" in Chapter 11 bankruptcy cases where the purpose is to rehabilitate the debtor and prevent liquidation.  Claimants' Br. at 17 (citing *MBNA Am. Bank, N.A.*, 436 F.3d at 110 distinguishing *In re White Mountain Mining Co., LLC*, 403 F.3d at 170).  However, the objective of centralizing disputes, while perhaps "especially critical" in the context of reorganization, is not irrelevant in liquidation proceedings.  Moreover, preventing liquidation and centralizing disputes are not the only Bankruptcy Code policies that may be implicated by compelling arbitration.

which here number in the hundred thousand.[10]  *See* Tr. 53:19-24 (the court characterizing the issue in the adversary proceeding as the "place of the claims in the capital structure of the debtors amongst thousands and thousands of other creditors, including thousands and thousands of similarly situated, equally aggrieved former employees.").

Claimants also contend that finding a conflict here would give courts the discretion to deny arbitration anytime the core function of prioritizing claims is in dispute contrary to the Second Circuit's directive that not every core proceeding creates a conflict.  *See* Claimants' R. Br. at 2, 4.  Claimants further contend that the Trustee's reliance on the arbitration's impact on other creditors' claims to establish a conflict with the Bankruptcy Code's objectives is insufficient to create a severe conflict.  Claimants' Br. at 23, *id.* at 23 n.9.  According to Claimants, if this "utterly generic issue" of the impact on other creditors by arbitration created a severe conflict, then *every* motion to compel arbitration would be defeated.  *Id.* at 22.

Claimants' arguments are unconvincing.  *First*, while Courts are concerned with creating an exception that swallows the rule limiting court's discretion to deny arbitration even in core bankruptcy proceedings, *see In re Winimo Realty Corp.*, 270 B.R. at 125, the Bankruptcy Court's finding does not create such an exception.  The Bankruptcy Court did not find that arbitration *might* create a conflict with the objectives of the Bankruptcy Code but instead identified a concrete conflict between the Bankruptcy Code's objective to uphold the priority scheme and apply it to all creditors in the bankruptcy and the arbitration of the subordination provision as it applies to these specific creditors in this liquidation with over one hundred thousand claims.

---

[10] Claimants' contention that because the ESEP Claims represents less than one percent of the overall estate, arbitration of the subordination issue is not central to the dispute mischaracterizes the conflict.  Tr. 30:21-23, 31:25-32:18.  The conflict here is not the amount of money the ESEP Claims represent but their place in the priority of creditors that creates the conflict.

*Second*, Claimants rely on two Third Circuit decisions that question whether a conflict based on the impact of the arbitrator's decision on creditors is sufficient to overrule the presumption in favor of arbitration. *See Hays*, 885 F.2d at 1159; *In re Mintze*, 434 F.3d 222, 231 (3d Cir. 2006). In *Hays* the court explained that "the mere existence of creditors in the core bankruptcy proceeding who might be indirectly affected by the arbitration decision [of a non-core proceeding] and who were not parties to the Customer Agreement does not require the denial of" the motion to compel arbitration. *Hays*, 885 F.2d at 1155, 1159 (granting a motion to compel arbitration of the trustee's claims brought under various state and federal laws but not claims brought under 11 U.S.C. § 554(b)). The Trustee and the Bankruptcy Court characterize this dispute as having a direct impact on creditors because it relates to the priority of claims *vis a vis* each other and distinguish disputes, such as those regarding the amount of a claim, that have an indirect impact on creditors because all creditors are paid from the same "pool" of funds. *See In re Hostess Brands, Inc.*, 2013 WL 82914, *4 (recognizing that where other creditors that have the right to intervene are impacted, "[i]t is hard to see how Congress would have meant to turn over this particular type of determination . . . to an arbitration panel in a two party dispute") ((citing *In re The Caldor Corp.*, 303 F.3d 161 (2d Cir. 2002); 11 U.S.C. § 1109(b)); *see also* Trustee's Opp'n Br. at 16 n.10; Tr. 30:1-4, 6-8 ("This is not a case in which we're talking about the liquidation by an arbitration of the amount of someone's claim, a classic arbitration," there "is an entire host of claimants relying on a particular interpretation of a subordination provision."); Tr. 53:16-24 (distinguishing the question of "liquidating the amount of a claim . . . under FINRA arbitration" from the question of the "place of the claims in the capital structure of the debtors amongst thousands and thousands of other creditors, including . . . similarly situated, equally aggrieved former employees"). Claimants contend this distinction presents a "false

20

dichotomy" because subordination of a claim would have the same practical effect as a claim denial—the claim would be worth zero under either scenario.[11]  Claimants' R. Br. at 5.  While the ultimate outcome of the adversary proceeding may have the same result for some creditors, this is the *direct* result of the arbitrator's determination on the priority of claims.

In *In re Mintze*, 434 F.3d at 231, the Third Circuit rejected an argument similar to the Trustee's—that the "determinat[ion] that the potential effect on the order of priority and the amount of distribution to [the debtor's] other creditors was sufficient to create an inherent conflict between the Bankruptcy Code's underlying purposes and arbitration."  In *Mintze* the debtor brought an adversary proceeding against a lender to enforce a pre-petition rescission of her loan agreement pursuant to state and federal consumer protection laws alleging that she was improperly induced to enter an illegal and abusive agreement.  *Id.* at 226.  Although the parties stipulated that the proceeding was a core bankruptcy dispute, and the outcome of the dispute would impact the priority of claims, no statutory bankruptcy claims were raised.  *Id.*  In granting the creditors' motion to compel arbitration, the *Mintze* court found that because no bankruptcy law issues were raised there could be no inherent conflict between arbitration and the objectives of the Bankruptcy Code.  *Id.* at 231.

Here, however, the Trustee brought this adversary proceeding pursuant to the Bankruptcy Code § 510(a), which provides "[a] subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law."

---

[11] The cases cited by Claimant for the proposition that the presumption in favor of arbitration may not be overcome by the fact that creditors' recovery would be affected by the arbitration, are inapposite because they address the issue of claim dispute and the allowance of claims, which the Bankruptcy Court acknowledged arbitration of would not severely conflict with the objectives of the Bankruptcy Code.  *See In re Shores of Panama, Inc.*, 387 B.R. 864, 867 (Bankr. N.D. Fla. 2008); *In re Farmland Indus., Inc.*, 309 B.R. 14, 18, 21 (Bankr. W.D. Mo. 2004) (compelling arbitration of a claims dispute despite the fact that "parties other than the Debtor may have a stake in the outcome of its dispute with [the creditor]"); *In re GWI, Inc.*, 269 B.R. 114, 119 (Bankr. D. Del. 2001) (compelling arbitration of a claims dispute); *see also* Claimants' Br. at 23 n.3; Tr. 53:15-24.

Claimants contend that unlike 11 U.S.C. § 510(c), which addresses equitable subordination governed solely by bankruptcy law, no bankruptcy law issues are present under § 510(a) or under Claimants' defenses to subordination.  Claimants' R. Br. at 6, 7.  Accordingly, state law issues predominate this dispute and, like *Mintze*, no bankruptcy law issues are present for arbitration to conflict with.  *Id.*  However, the application of state law does not negate the fact that this adversary proceeding was brought under the Bankruptcy Code § 510(a) and that "the power to prioritize distributions has long been recognized as an essential element of bankruptcy law."  *In re Best Products Co., Inc.*, 68 F.3d at 31-32.

Claimants contend that the Bankruptcy Court put too much emphasis on whether the adversary proceeding was core and that its determination that a conflict existed was perfunctory. Claimants' Br. at 25-26.  This Court disagrees.  The Bankruptcy Court made a determination that a conflict existed in a "particularized inquiry into the nature of the claim and *the facts of the specific* bankruptcy."  *MBNA*, 436 F.3d at 108; *see, e.g.*, Tr. 29:8-32:23, 38:17-41:24, 47:5-48:14, 52:15-54:24.   That the Bankruptcy Court did so in a hearing in open court does not mean that the court did not make the necessary findings.  The Bankruptcy Court identified an underlying purpose of the Bankruptcy Court—to treat differently situated creditors differently through prioritization of claims—and found that sending this subordination dispute to arbitration would create a severe conflict with this Bankruptcy Code objective in this case.  Tr. 64:20-65:2. Accordingly, this Court affirms the Bankruptcy Court's finding that compelling arbitration of the subordination dispute would seriously jeopardize the objective of the Bankruptcy Court to control the prioritization of claims within bankruptcy.

### ii.  The Identity of the Debtor

The Bankruptcy Court also found that "[n]othing could really be more core for a bankruptcy court than determining historically and as a matter of judicial contours who the debtor is and who the debtor was, what its obligations and rights are" and characterizing that determination as "the whole ball of wax."  Tr. 41:3-8.  The identity of the debtor is at issue because of Claimants' defense that the subordination provision may only be applied by the former entity, Shearson, and not the Debtor, LBI.  *See* Bankr. Doc. 8783 ¶¶ 24-78.  Accordingly, the arbitrator must decide whether Shearson and the debtor, LBI are the same or different entities for the purposes of the subordination provision.  Trustee's Opp'n Br. at 16-17; Tr. 40:18-41:2. The Trustee contends that arbitrating the identity of the debtor conflicts with the Bankruptcy Code's policy of centralizing disputes because the identity of the debtor has potentially "far-reaching" effects for claims not represented in the arbitration, including other deferred compensation plan participants and any creditors that entered agreements with Shearson in this time period.  Trustees' Opp'n Br. at 17 (specifically identifying claims brought by participants in another deferred compensation plan that predates the ESEP, which have already been allowed as general unsecured claims).

While Claimants now dispute that the identity of the debtor is at issue, at oral argument they conceded that "in effect" one of the things they were asking to be decided for the purposes of this defense was "whether Shearson and Lehman, for certain purposes under this contract, are one in the same."  Tr. 40:18-41:2.  Claimants contend that the sole issue, which they claim would not impact the identity of the Debtor, is whether the Debtor may enforce the subordination provision in light of the language referring only to Shearson based on the history and principles

23

of corporate successorship.  Claimants' R. Br. at 2, 8.  This Court agrees with the Bankruptcy

Court that this inquiry undoubtedly implicates the identity of the debtor.

Claimants also contend that the Bankruptcy Code's objective of centralizing disputes is

not implicated here because arbitration of this issue will not impact other creditors.  *See id.* at 8.

Companies have either stopped using this type of deferred compensation agreements due to tax

implications that arose after 1985 or, to the extent that other creditors have deferred

compensation agreements, those agreements do not use the same language at issue here.  *See* Tr.

41:17-42:8, 42:25-43:5.[12]  However, this does not account for the potential other creditors that

may have entered agreements with Shearson and would be so impacted by a determination of the

debtor's identity.  *See* Trustee's Opp'n Br. at 17 ("If a FINRA arbitration panel decided that the

company [Shearson] which entered into the ESEP . . . agreement[], as well as any other

agreements arising from this time period, was not the same company as the debtor in this SIPA

liquidation, this decision would have implications for claims far beyond those included in this

ESEP adversary proceeding.").  The impact to other creditors as the basis for creating a conflict

with the Bankruptcy Code's objective to centralize disputes, is as relevant to this analysis as it is

to the priority of claims.

---

[12] Claimants also argue that the Trustee's description of a deferred compensation plan other than the ESEP is
inappropriate because the Trustee did not include this information in the record or in its designation of the transcript.
Claimants' R. Br. at 8 n.5.  However, Claimants themselves brought up the "four other deferred compensation
agreements" in oral argument in front of the Bankruptcy Court and discuss other deferred compensation plans in
their answer.  *See* Tr. 41:25-42:2, Bankr. Doc. 8783 at ¶ 66.

### iii.   The Rejected Executory Contract

The parties dispute whether Claimants' rejected executory contract defense[13] raises a "novel argument" creating a conflict between two provisions of the Bankruptcy Code because the Bankruptcy Code contemplates both the rejection of executory contracts and the enforcement of subordination provisions.  Trustees' Opp'n Br. at 18; Claimants' R. Br. at 9.  Notwithstanding whether this defense creates a novel issue, the rejection of an executory contract "requires express authorization by the court, [and a]rguably this authorization requirement does not comport with allowing disputes over these matters to be handled through arbitration."  *In re Hostess Brands, Inc.*, 2013 WL 82914, at *4; 11 U.S.C. § 365 *et seq.* (explaining that with the bankruptcy court's approval the debtor has the option to assume or reject an executory contract).

This Court finds that the Trustee and Bankruptcy Court identified the objectives of the Bankruptcy Code that would be seriously jeopardized or severely conflicted in this liquidation by the arbitration of disputes regarding the priority of claims, the identity of the debtors, or the rejected executory contract.  Accordingly, the Bankruptcy Court had the discretion to deny Claimants' motion to compel arbitration and did not abuse this discretion.[14]

### c.   The Expertise of the Arbitrator

While this Court does not doubt FINRA's capability to decide these issues, the Bankruptcy Court is at least equally qualified to do so, particularly here, where the court has spent seven years presiding over this liquidation and appreciates the impact these determinations likely will have on the complex proceedings and numerous creditors involved.  FINRA's specific

---

[13] The parties also dispute whether the ESEP Agreement is a rejected executory contract and if it is, the effect of the rejection.  Trustee Opp'n Br. at 12; *id.* at 12 n.9.

[14] Claimants do not allege that the Bankruptcy Court abused its discretion.

expertise regarding the New York Stock Exchange rules, while relevant in interpreting the provisions of the ESEP Agreement that implicate these rules, including sections of the subordination provisions, is immaterial in interpreting the subordination provision at issue, which does not mention, nor rely on the New York Stock Exchange rules. *Compare* Bankr. Doc. 8576 Ex. A at §§ 9(d),(e), *with* §§ 9(a),(c),(f), and (g). Claimants also argue that, as an industry expert, FINRA would be better suited to interpret the ESEP Agreement, which incorporates industry-specific terms, including the "atypical" subordination provision at issue and to address the Trustee's securities law argument regarding Rule 15c3. Claimants' Br. at 19, 27-28. FINRA's expertise with securities laws and the securities industry, however, is less important in this liquidation commenced under SIPA, which explicitly governs the liquidation of broker-dealers. While Claimants contend that this is irrelevant because the SIPA portion of the bankruptcy is complete and all SIPA claims are resolved, *see* Claimants' R. Br. at 14, Claimants do not explain why a bankruptcy court capable of resolving all SIPA claims, is also not capable of resolving this allegedly industry-specific issue. Notwithstanding whether the arbitrator's experience is relevant to the inquiry under the Second Circuit's test, here, the arbitrator's experience does not favor compelling arbitration.

In sum, the Bankruptcy Court applied the correct legal test and made the necessary findings concerning conflict. Accordingly, its decision will be affirmed. *See In re U.S. Lines, Inc.*, 197 F.3d at 641 ("[w]here the bankruptcy court has properly considered the conflicting policies in accordance with law, we acknowledge its exercise of discretion and show due deference to its determination that arbitration will seriously jeopardize a particular core bankruptcy proceeding."); *MBNA*, 436 F.3d at 108 (finding that where "a severe conflict is found, then the court can properly conclude that, with respect to the particular Code provision

involved, Congress intended to override the Arbitration Act's general policy favoring the enforcement of arbitration agreements.").

## III.   Conclusion

For the reasons set forth above, the Bankruptcy Court's August 11, 2014 Order is AFFIRMED.  The Clerk of the Court is respectfully directed to docket this decision and close the case.

It is SO ORDERED.

Dated:    September 30, 2015
          New York, New York

Edgardo Ramos, U.S.D.J.